**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD A. WILLIAMS**, | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | 2:98cv1320 |
| | ) | Electronic Filing |
| **JAMES PRICE**, | ) | |
| Respondent, and the **ATTORNEY** | ) | |
| **GENERAL OF THE STATE** | ) | |
| **PENNSYLVANIA**, Additional | ) | |
| Respondent | ) | |

## OPINION

### I. Introduction

This matter is before the Court on remand from the United States Court of Appeals for the Third Circuit in connection with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Ronald A. Williams ("Williams" or "Petitioner"). In accordance with the remand order, the Court held an evidentiary hearing on April 2 and 3, 2012, the official transcript of which has been filed of record and considered by the Court. (Docket No. 131). The parties subsequently filed proposed findings of fact and conclusions of law, and Williams filed a supplemental memorandum regarding the Supreme Court's recent decision in *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855 (2017). (Docket Nos. 141, 144, 145, 150, 151, 164). After careful consideration of the parties' submissions and the credible evidence of record, and for the following reasons, the Court concludes that Williams is not entitled to relief.

## II.    <u>Procedural History</u>[1]

Following a jury trial that occurred in 1985 in the Court of Common Pleas of Butler County, Pennsylvania, Williams was convicted of first-degree murder, for which he currently is serving a term of life imprisonment.[2]  After unsuccessfully pursuing state post-conviction relief, Williams filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania.  The District Court issued an order denying the petition and the Third Circuit Court of Appeals granted a certificate of appealability.

On appeal, Williams argued that his right to an impartial jury was abridged because the state courts refused in post-trial proceedings to admit certain evidence of racial bias by members of the jury, which he had sought to introduce to show that jurors lied during voir dire when they denied racial prejudice.  The state courts refused to consider the evidence based on the "no-impeachment" rule, which generally bars juror testimony for the purpose of impeaching a verdict.  The Third Circuit Court of Appeals held that the state courts' refusal to receive some of the evidence violated Williams' clearly established constitutional rights and remanded the case to this Court for an evidentiary hearing at which he would "have the opportunity to introduce the improperly excluded evidence and to attempt to prove that a juror lied during voir dire." *Williams*, 343 F.3d at 225.

Following remand, Williams filed a motion to amend his habeas corpus petition, which Magistrate Judge Lisa Lenihan denied in an opinion and order dated September 15, 2009.

---

[1]     The Court relies on the Third Circuit Court of Appeals' decision in *Williams v. Price*, 343 F.3d 223 (3d Cir. 2003), for relevant procedural history and background information in this case.

[2]     Williams was tried and convicted along with his brother, Raymond Williams, and both originally were sentenced to death.  On appeal, the Pennsylvania Supreme Court concluded that prejudicial extraneous information had tainted the death verdicts, thus those verdicts were

(Docket No. 91). On January 14, 2010, Magistrate Judge Lenihan granted Williams' motion for partial reconsideration and permitted him to amend the petition to present a claim that certain jurors lied on voir dire when asked about racial bias (hereinafter, the "January 2010 order"). (*See* Docket No. 103). Specifically, the January 2010 order provided:

> At the evidentiary hearing to be held in this case, Petitioner may present evidence to demonstrate that Jurors Geisler, Hancheck, Bowser and Juror Number Two lied on voir dire when asked about their racial biases, but this evidence may not include testimony by former jurors concerning discussions that occurred during deliberations or that pertain to the decision-making process.

*Id.* at 8.

This Court held an evidentiary hearing on April 2 and 3, 2012, at which Williams presented testimony by the following witnesses: Sallie Lane, who was a trial witness for the prosecution; Rudolph Weaver, who was an alibi witness for the defense at trial; Paul Bowser, Robert Hancheck and Francis Geisler, who were trial jurors; Thomas Baughman, who was a co-worker of Bowser; Richard Goldinger, who was trial counsel for Williams' brother; Marc Caudel, who formerly was an investigator at the Federal Public Defender's Office; and Dr. Samuel Sommers, who is a social psychologist. Williams also sought to admit an affidavit dated May 31, 1988, by trial juror Judith Montgomery, who is now deceased. Respondents presented the testimony of Leo Kamphaus, who was trial Juror Number Two.

Following the hearing, the parties submitted their proposed findings of fact and conclusions of law (Docket Nos. 141, 144, 145) and responses thereto (Docket Nos. 150, 151). Williams also filed a supplemental memorandum regarding *Pena-Rodriguez*. (Docket No. 164). Accordingly, the matter has been fully argued and briefed and is ripe for disposition.

---

vacated and the case was remanded for imposition of sentences of life imprisonment.

### III. **Legal Standard**

Pursuant to 28 U.S.C. § 2254(a), federal courts have jurisdiction to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Federal habeas relief may be granted "with respect to [a] claim that was adjudicated on the merits in State court" if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] 28 U.S.C. § 2254(d)(1). The Supreme Court has emphasized that this standard is "difficult to meet." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal quotations and citations omitted).

Under § 2254(d)(1), "clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). It "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law if the state court (1) "applies a rule that contradicts

---

3    Though not an issue in this case, federal habeas relief also may be available on a claim adjudicated in state court that "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

the governing law" set forth in Supreme Court precedent or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different" from that reached by the Supreme Court. *Id.* at 405–06. A state court decision is an "unreasonable application of federal law" if the state court "identifies the correct governing legal principle," but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

When this case was before the Third Circuit Court of Appeals, Williams pointed to *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984), as the Supreme Court precedent that the state courts contradicted or unreasonably applied. *See Williams*, 343 F.3d at 229. In *McDonough*, the losing parties in a federal civil suit argued that they were entitled to a new trial because a juror had failed to disclose material information in response to a question posed during voir dire. The Supreme Court held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556.

After considering whether certain evidence offered by Williams should have been considered by the state courts to determine whether a juror lied when questioned about racial bias, the Court of Appeals concluded that the case should be remanded for an evidentiary hearing at which Williams would have the opportunity to make the showing mandated by *McDonough*,[4] i.e., to attempt to prove that a juror lied during voir dire. *See Williams*, 343 F.3d

---

U.S.C. § 2254(d)(2).

4      "Although *McDonough* was a federal civil case, a state court decision failing to apply this same rule in a criminal prosecution would represent an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1)." *Williams*, 343 F.3d at 229.

at 225, 239.

For the reasons that follow, the Court concludes that Williams has not made the requisite showing because the evidence he presented does not demonstrate that Jurors Geisler, Hancheck, Bowser and Kamphaus failed to answer honestly on voir dire when asked about racial bias. Accordingly, Williams is not entitled to habeas relief.

**IV.    <u>Analysis</u>**

During voir dire in Williams' 1985 trial, the trial court posed two questions concerning racial bias:

- Do you personally believe that blacks as a group are more likely to commit crimes of a violent nature involving firearms?

- Can you listen to and judge the testimony of a black person in the same fashion as the testimony of a white person, giving each its deserved credibility?

*Williams*, 343 F.3d at 226. All jurors who were selected to serve answered "no" to the first question and "yes" to the second question. *Id.*

Williams maintains that the evidence he presented at the hearing establishes that one or more jurors harbored racial bias and did not provide honest answers when asked during voir dire about their ability to listen to and judge the testimony and credibility of a black person in the same fashion as a white person. Respondents argue that Williams produced no direct evidence that any of the four jurors in question lied during voir dire when asked about racial bias. According to Respondents, the evidence showed only that Geisler, Hancheck and Bowser had used racial slurs at times and places unrelated to the trial, but that does not establish that they lied under oath when they stated that they could be fair jurors.

**A.**   ***Pinholster* Does Not Restrict This Court's Consideration of Evidence Presented by Williams in Determining Whether He is Entitled to Habeas Relief.**

A little over one year after the January 2010 order was issued, but one year prior to the evidentiary hearing, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, the petitioner may not introduce new evidence before a federal habeas court. *Id.*

Although *Pinholster* limits the evidence a federal habeas petitioner can present, the decision's potential effect on Williams' case has not been previously addressed. Therefore, we must first consider what impact, if any, *Pinholster* has on the Court's consideration of the evidence presented by Williams. In order to make that assessment, it is necessary to review the background of this case.

**1.**   **Relevant Background**

In 1994, Williams filed a state Post-Conviction Relief Act ("PCRA") petition in which he argued that members of the jury had lied during voir dire when they answered questions about racial prejudice. *Williams*, 343 F.3d at 227. In support of his petition, Williams relied on an affidavit by Jewel Hayes,[5] who had testified at trial, and an affidavit by now deceased trial juror, Judith Montgomery.[6] *Id.* The PCRA court denied Williams' petition, stating that he had

---

5    Hayes' affidavit averred: "Subsequent to the proceedings in this case ... I ran into Juror Number Two (2) in the lobby of the Courthouse.... Upon seeing me he stated 'All niggers do is cause trouble.' I am not sure whether this was stated directly to me but it was stated for my benefit and loudly enough for me to hear and to get a rise out of me. During our confrontation he also stated 'I should go back where I came from.'" *Williams*, 343 F.3d at 227.

6    Montgomery's affidavit stated in relevant part: "[W]hen I was Juror No. 9 in the trial of Commonwealth of Pennsylvania vs. Ronald Williams and Raymond Williams . . . I was called

argued that racial slurs allegedly had been uttered by jurors "during jury deliberations," but a juror may not impeach the verdict by her own testimony. *Id.* The PCRA court noted that an exception to this rule exists for extraneous influences on the jury deliberation process, but found that the alleged slurs were not extraneous and thus did not fall within the exception. *Id.* at 227-28. The PCRA court did not explain why it did not consider Hayes' affidavit. *Id.* at 228.

On appeal to the Pennsylvania Superior Court, Williams argued that his federal constitutional right to an impartial jury had been abridged by the PCRA court's refusal to consider the evidence in the Hayes and Montgomery affidavits to determine whether jurors had lied during voir dire. *Williams*, 343 F.3d at 228. The Superior Court affirmed based on the PCRA court's analysis. *Id.* The Pennsylvania Supreme Court denied Williams' petition for review. *Id.*

Williams then filed a petition for a writ of habeas corpus in this Court, which was denied. On appeal, Williams argued that his right to an impartial jury was abridged because the state courts refused in post-trial proceedings to admit certain evidence of racial bias by members of the jury. As discussed, Williams pointed to *McDonough* as the Supreme Court precedent that the state courts contradicted or unreasonably applied. *Williams*, 343 F.3d at 229. The Court of Appeals noted that "*McDonough* addressed the right of a party to obtain a new trial upon making a particular showing, not the admissibility of evidence to make that showing," *id.* at 229, and then discussed the interplay between a defendant's constitutional right to offer evidence of juror misconduct and the no-impeachment rule.[7] *Id.* at 230-32.

---

'a nigger lover' and other derogatory names by other members of the jury. Remarks were made to me such as 'I hope your daughter marries one of them.'" *Williams*, 343 F.3d at 227.

7       The Court of Appeals cited *Tanner v. United States*, 483 U.S. 107 (1987), as the Supreme Court decision that best addressed that interplay. In *Tanner*, the defendants contended that the trial judge had erred by refusing to conduct an evidentiary hearing at which jurors would

Against that background, the Court of Appeals considered the Hayes and Montgomery affidavits. Hayes was not a juror, yet none of the courts that had considered Williams' request for post-conviction relief had explained why her affidavit was inadmissible or was insufficient, even if believed, to warrant relief. *Williams*, 343 F.3d at 233-34. The Court of Appeals determined that "the failure to receive and consider Hayes' testimony for the purpose of determining whether a juror lied during voir dire cannot be sustained under 28 U.S.C. § 2254(d)(1)." *Id.* at 234.

With respect to Montgomery's affidavit, the Court of Appeals concluded that if the juror statements to which she referred occurred during jury deliberations, the state courts did not violate "clearly established Federal law" in refusing to consider those statements. *Williams*, 343 F.3d at 236. However, Montgomery did not specify exactly when or where the alleged comments were made; thus, if the comments were not made during deliberations and if Montgomery's testimony about those comments was received for the limited purpose to show that jurors lied during voir dire, it could be argued that her testimony would not be barred by Rule 606(b). *Id.* Nevertheless, the Court of Appeals "[could not] say that 'clearly established Federal law, as determined by the Supreme Court of the United States' requires a state to admit such testimony." *Id.* The Court of Appeals emphasized that:

> [W]e do not hold that testimony of the type at issue is inadmissible under Rule 606(b) or any other particular version of the "no impeachment" rule. We express no view on those questions. We hold only that the exclusion of such testimony is not irrational and does not contravene or represent an unreasonable application of

---

be permitted to testify about alcohol and drug use by fellow jurors during the trial. The defendants argued that such testimony was not barred by the no-impeachment rule codified in Federal Rule of Evidence 606(b). Even if the testimony was prohibited by Rule 606(b), the defendants argued that the trial judge's refusal to receive the evidence violated their constitutional right to a competent jury. The Supreme Court disagreed, and held that the testimony at issue was barred by Rule 606(b). The Court also rejected the defendants' constitutional argument, noting that the no-impeachment rule is supported by "long-recognized and very substantial concerns." *Tanner*, 483 U.S. at 127.

clearly established federal law.

*Id.* at 237. This holding left it to the District Court to determine whether or not Montgomery's affidavit was admissible.

Finally, Williams argued that Montgomery's testimony should not have been excluded because evidence of racial bias by the jurors should be excepted from the no-impeachment rule. *Williams*, 343 F.3d at 237. The Court of Appeals stated "it appears" this argument was procedurally defaulted because Williams never squarely presented it to the state courts by arguing that juror statements evidencing racial bias fall outside the no-impeachment rule. *Id.* Even if the Court of Appeals could reach the merits of this argument, there was no "clearly established Federal law" (i.e., "holdings, as opposed to the dicta, of [the Supreme] Court's decisions") at the time the state courts decided Williams' petition for post-conviction relief. *Id.*

As stated, the Court of Appeals remanded the case for an evidentiary hearing at which Williams would have the opportunity to make the showing mandated by *McDonough*. *Williams*, 343 F.3d at 239. After remand, Williams was granted leave to amend his petition to add a claim that Jurors Geisler, Hancheck, Bowser and Kamphaus lied on voir dire when asked about racial bias.[8] (*See* Docket No. 103 at 8). To that end, the January 2010 order specified that Williams could present evidence at the hearing to show that these jurors lied when questioned during voir dire, but the evidence could not concern discussions that occurred during deliberations or pertained to the decision-making process.

---

[8]     As recounted in the January 2010 order, Williams raised the claim of racial bias by the jury in his first PCRA petition filed in 1994. (*See* Docket No. 103 at 7). The PCRA court held that consideration of Juror Montgomery's affidavit was barred by the Pennsylvania version of the no-impeachment rule. *Id.* When Williams presented the proposed testimony by jurors other than Montgomery to the PCRA court in 2005, that court did not rule on the admissibility of the testimony because it concluded that the petition was time barred. *Id.*

## 2.     Application of *Pinholster* to Williams' Case

As explained, *Pinholster* limits the evidence which a federal habeas petitioner can present.  In assessing whether *Pinholster* impacts Williams' case, the following salient points merit emphasis:

- Williams originally presented his claim that members of the jury had lied during voir dire when they answered questions about racial prejudice in his PCRA petition in 1994.

- The Third Circuit Court of Appeals ultimately remanded this case for an evidentiary hearing "at which Williams [would] have the opportunity to introduce the improperly excluded evidence and to attempt to prove that a juror lied during voir dire." *Williams*, 343 F.3d at 225.  The improperly excluded evidence was Hayes' affidavit and possibly Montgomery's affidavit, if the District Court found that it was admissible.  The Court of Appeals did not otherwise specify how Williams could prove that a juror lied during voir dire.

- Following remand, Williams was granted leave to amend his petition to include a claim that Jurors Geisler, Hancheck, Bowser and Kamphaus lied during voir dire when asked about racial bias.  Williams was permitted to present evidence to demonstrate that those jurors lied, but was precluded from presenting evidence by former jurors concerning discussions that occurred during deliberations or pertaining to the decision-making process.

- Williams' evidence at the hearing consisted of testimony by two trial witnesses, three trial jurors, a co-worker of one of the trial jurors, trial counsel for Williams' brother, an investigator and a social psychologist, **none of which was previously presented to the state court**.  Williams also proffered Montgomery's affidavit, but he did not seek to admit Hayes' affidavit.[9]

At a glance, *Pinholster* appears to preclude this Court from considering Williams' testimonial evidence that was not previously presented to the state court.  However, more

---

[9]     Williams has not relied on Hayes' affidavit in attempting to establish that the four jurors in question lied when asked during voir dire about racial bias.  Williams stated, "Ms. Hayes is deceased.  Her affidavit is not in evidence."  (Docket No. 151 at 23, n.13).  As Williams explained, the hearing testimony establishes that Hayes' affidavit "mistakenly identified Juror No. 2, Leo Kamphaus, as the juror who made a comment about niggers always causing trouble. Based on the testimony [presented at the hearing], it appears that Mr. Kamphaus had an encounter with another trial witness, Mary Dandridge, and not Ms. Hayes."  (Docket No. 141 at

careful consideration is required because Williams was given leave to amend his petition to include a claim that Jurors Geisler, Hancheck, Bowser and Kamphaus lied on voir dire when asked about racial bias. In view of the fact that Williams was permitted to amend his petition in 2010, the question is whether *Pinholster*, which was issued in 2011, restricted Williams from presenting new evidence at the evidentiary hearing that was held in 2012. The answer to this question is "no." Although Williams originally raised the claim of racial bias by the jury in his original PCRA petition, the *specific* claim whether the four jurors in question lied was not presented to, and adjudicated on the merits by, the state courts. *See Pinholster*, 563 U.S. at 185 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014) ("A state court's decision is an adjudication on the merits where it is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.") (internal quotations and citation omitted).

For the foregoing reasons, the Court concludes that *Pinholster* does not bar consideration of the evidence Williams presented at the hearing, a result which is in the interests of justice in view of the involved history of this case. Nevertheless, for reasons we next explain, Williams' evidence does not suffice to make the showing mandated by *McDonough*—that Jurors Geisler, Hancheck, Bowser and Kamphaus failed to answer honestly a material question on voir dire.

**B.** **Williams Has Not Made the Showing Mandated by *McDonough*, Thus He is Not Entitled to Habeas Relief.**

To obtain a new trial because a juror failed to disclose material information in response to questioning during voir dire, "a party must first demonstrate that a juror failed to answer

honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. As Williams concedes, this test "uses a subjective standard to determine honesty." (Docket No. 141 at 29). Williams contends that he is entitled to relief because the evidence he presented shows that the jurors in question provided dishonest answers to the questions posed during voir dire concerning racial bias. The Court disagrees.

## 1. __Montgomery's Affidavit is Inadmissible Under Rule 606(b); However, Even if the Affidavit is Admissible, It Does Not Establish That One of the Jurors Failed to Answer Honestly a Material Question on Voir Dire.__

According to Williams, "Ms. Montgomery's affidavit is more probative of racial bias than any other available evidence." (Docket No. 141 at 49). Williams argues that the affidavit is admissible and not barred by Federal Rule of Evidence 606(b) because the comments to Ms. Montgomery that she was a "nigger lover" and other related derogatory statements were not made during deliberations. (Docket No. 131 at 72-73; Docket No. 141 at 43).

Affidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room. *McDonald v. Pless*, 238 U.S. 264, 267-69 (1915); *Mattox v. United States*, 146 U.S. 140, 148-49 (1892). In consonance with this principle, Rule 606(b) of the Federal Rules of Evidence expressly prohibits the use of a juror's affidavit to impeach a verdict except with respect to extraneous prejudicial information or outside influence. This is known as the no-impeachment rule, and it "has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations." *Pena-Rodriguez*, 137 S.Ct. at 861.

This Court ruled at the hearing that the statements in Montgomery's affidavit are barred

by Federal Rule of Evidence 606(b).  It stated: "it's more likely than not that those statements were made during deliberations . . . it seems to be the logical place and time when they were made, and I think they are barred by 606."  (Docket No. 131 at 72).  Further review of and reflection on the nature of the statements only fortifies the view that the statements were made to Montgomery during deliberations.  Consequently, the Court reaffirms its ruling that Montgomery's affidavit identifies statements that were made during jury deliberations and its use is barred by Rule 606(b).

Assuming for the sake of argument that Montgomery's affidavit is admissible under Rule 606(b), it does not establish that Jurors Geisler, Hancheck, Bowser and Kamphaus made the racial slur and derogatory comments directed to Montgomery, let alone that they failed to answer honestly when asked during voir dire about racial bias.  Nothing in Montgomery's affidavit contradicts those four jurors' subjective belief that they answered honestly when they indicated they could evaluate the testimony and credibility of all witnesses in the same fashion and be fair jurors.

### 2.  **Montgomery's Affidavit is Inadmissible Under _Pena-Rodriguez_.**

Even if Montgomery's affidavit is inadmissible under Rule 606(b), Williams argues that it must be admitted under _Pena-Rodriguez_.  (Docket No. 164 at 3).  Williams is incorrect.

In _Pena-Rodriguez_, the defendant was convicted by a Colorado jury of harassment and unlawful sexual contact.  Following discharge of the jury, two jurors told defense counsel that a juror had expressed anti-Hispanic bias toward the defendant and his alibi witness during deliberations.  Counsel obtained affidavits from the two jurors describing a number of biased statements by the other juror indicating that he believed the defendant was guilty because Mexican men believed they could do whatever they wanted with women, and that he thought the

defendant committed the crimes because he was Mexican. The juror also said that he did not find the defendant's alibi witness credible because he was "an illegal." After reviewing the affidavits, the trial court acknowledged the juror's apparent bias, but denied the defendant's motion for a new trial based on Colorado's version of the no-impeachment rule. The Colorado Supreme Court affirmed. The Supreme Court granted certiorari "to decide whether there is a constitutional exception to the no-impeachment rule for instances of racial bias." *Pena-Rodriguez*, 137 S.Ct. at 863.

The Supreme Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Pena-Rodriguez*, 137 S.Ct. at 869. However, "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Id.* The Supreme Court explained what must be shown for the inquiry to proceed:

> [T]here must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

*Id.*

The Supreme Court concluded that the juror's statements at issue in *Pena-Rodriguez* "were egregious and unmistakable in their reliance on racial bias." *Pena-Rodriguez*, 137 S.Ct. at 870. In reaching that conclusion, the Court observed that the juror not only deployed a dangerous racial stereotype to conclude the defendant was guilty and his alibi witness should not be believed, but also encouraged other jurors to join him in convicting on that basis. *Id.*

As an initial matter, there are several problems with Williams' reliance on *Pena-Rodriguez*. The issue before the Supreme Court was whether there is a constitutional exception to the no-impeachment rule for instances of racial bias. *Pena-Rodriguez*, 137 S.Ct. at 863. Williams apparently procedurally defaulted a similar argument. The Third Circuit Court of Appeals stated that "it appears" Williams procedurally defaulted the argument that "evidence of racial bias on the part of jurors should be excepted from the 'no impeachment' rule." *Williams*, 343 F.3d at 236, 237.

Even if Williams' argument was not procedurally defaulted, the limited standard of review under 28 U.S.C. § 2254(d)(1) would preclude relief under *Pena-Rodriguez*. Under §2254(d)(1), "clearly established federal law" "refers to the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. *Pena-Rodriguez* was decided in 2017, well after the state court decisions on Williams' PCRA petition and appeal.

However, to afford Williams the benefit of the doubt, we will assume without deciding that *Pena-Rodriguez* is retroactive and can be considered on federal habeas review. Even in that case, *Pena-Rodriguez* is unavailing to Williams. Assuming one of the four jurors in question called Montgomery a "nigger lover," the racial slur was directed to Montgomery, not to Williams. That significant fact distinguishes this case from *Pena-Rodriguez*, in which the juror made racially biased comments against Mexicans that were specifically directed to the defendant and his alibi witness. Critically, the juror stated that he thought the defendant was guilty because he was Mexican. As the Supreme Court held, "[t]o qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict." *Pena-Rodriguez*, 137 S.Ct. at 869. The racial slur and derogatory comments contained in Montgomery's affidavit, which were directed to her, do not show that racial animus was a

significant motivating factor in the vote to convict by Jurors Geisler, Hancheck, Bowser and Kamphaus or any other juror. Montgomery's claim that she was called a "nigger lover," while reprehensible and abhorrent, does not qualify under *Pena-Rodriguez*.

The instant case is analogous to the situation in *United States v. Robinson*, 872 F.3d 760, 771 (6th Cir. 2017), in which the Sixth Circuit Court of Appeals determined that *Pena-Rodriguez* did not apply to the juror's comments at issue. In *Robinson*, the jury foreperson told two African-American jurors that she "'[found] it strange that the colored women are the only two that can't see' and that she thought they were protecting the defendants because they felt they 'owed something' to their 'black brothers.'" *Id.* The Sixth Circuit stated that the foreperson's comments clearly "indicat[ed] racial bias or hostility," but she did not make the comments, much less a "clear statement," showing that animus was a "significant motivating factor" in her own vote to convict. *Id.* The foreperson never suggested that she voted to convict the defendants because they were African-American. *Id.* Rather, the foreperson "impugn[ed] [the juror's] integrity based on their shared race with the defendants, [but] she never said anything stereotyping the defendants based on their race." *Id.*

The situation in *Robinson* was unlike *Pena-Rodriguez*, where the juror stated that "I think [the defendant] did it because he's Mexican and Mexican men take whatever they want," "Mexican men had a bravado that caused them to believe they could do whatever they wanted with women," and "nine times out of ten Mexican men were guilty of being aggressive toward women and young girls." *Robinson*, 872 F.3d at 771 (quoting *Pena-Rodriguez*, 137 S.Ct. at 862). As the Sixth Circuit observed, those remarks demonstrated the juror's animus against Mexicans and his reliance on that bias in voting to convict. In contrast, the foreperson's remarks in *Robinson* were not directed against the defendants in the same way that the juror's remarks were directed against the defendant in *Pena-Rodriguez*. *Robinson*, 872 F.3d at 771.

Accordingly, the Sixth Circuit held that there was no violation of *Pena-Rodriguez* or the Sixth Amendment. *Id.*

As in *Robinson*, the comments contained in Montgomery's affidavit were not directed against Williams, but rather to Montgomery. Whoever purportedly made the comments did not indicate they had voted or were going to vote to convict Williams because he is African-American.[10] Therefore, Montgomery's affidavit is not admissible under *Pena-Rodriguez*, and this Court is precluded from considering it in evaluating whether one of the jurors failed to answer honestly a material question on voir dire.

3. **Williams' Other Evidence Admitted at the Hearing Does Not Establish That One of the Jurors Failed to Answer Honestly a Material Question on Voir Dire.**

There was testimony at the hearing that the word "nigger" was commonly used in Butler County, Pennsylvania in the mid-1980's when Williams' trial took place. (Docket No. 131 at 35, 82, 112, 138). Sallie Lane testified that she heard a man state in the courthouse parking lot that "one of the niggers was guilty but the other one wasn't." *Id.* at 7. Ms. Lane recognized the man as a trial juror, but she did not mention this to anyone until Williams had been in jail for quite some time. *Id.* at 8, 19. Rudolph Weaver, who is now serving a life sentence of imprisonment for bank robbery, testified that he heard a man state in the courthouse hallway that "damn niggers [are] always causing trouble" and that Weaver should "go back where [he] come from." *Id.* at 123, 132. Mr. Weaver later saw the man seated in the jury box at Williams' trial. *Id.* at 124-25. Jewel Hayes tried to relay this information to Williams' lawyer, but her attempt was cut short because the judge had entered the courtroom. *Id.* at 126-27. Weaver first reported

---

[10]    As previously explained, Montgomery is deceased. Thus, further details about the referenced verbal exchange and the context in which it occurred cannot be obtained.

the information when Williams' case was on appeal.  *Id.* at 131.

Accepting as credible the foregoing testimony, it does not establish that Jurors Geisler, Hancheck, Bowser or Kamphaus made the alleged comments reported by Lane and Weaver. There was no evidence presented to establish that Jurors Geisler, Hancheck, Bowser and Kamphaus used the word "nigger" or any other racial slur in connection with the trial, the defendants or any of the witnesses.  However, Jurors Geisler, Hancheck and Bowser conceded they had used the word "nigger" at other times in other contexts during their lives.  (Docket No. 131 at 40, 55, 139).

To establish that an individual who uses racial slurs is biased, Williams presented testimony by Dr. Sommers, who studies issues related to racial bias.  (Docket No. 131 at 149). According to Dr. Sommers, individuals who use slurs are significantly more likely to harbor prejudice and bias toward a particular group, and there is a statistically reliable correlation between the use of anti-black racial slurs and anti-black prejudice.  *Id.* at 161, 164.  Dr. Sommers explained that the denial of a racial bias is not a reliable basis upon which to conclude that an individual does not harbor prejudice.  *Id.* at 185.  However, he also conceded that it would be possible for an individual to make a good faith effort to fairly judge someone of a different racial group.  *Id.* at 192.  Critically, Dr. Sommers admitted that he could not conclusively determine whether racial bias existed in this particular case.  *Id.* at 187.   Overall, Dr. Sommers' testimony established that one who uses racial slurs may harbor bias or prejudice, but it did not establish that any juror failed to answer honestly a material question on voir dire *in this particular case*.

As the Court of Appeals explained, all jurors who were selected to serve on Williams' case answered "yes" to the question "[c]an you listen to and judge the testimony of a black person in the same fashion as the testimony of a white person, giving each its deserved

credibility?" *Williams*, 343 F.3d at 226. Jurors Geisler, Hancheck, Bowser and Kamphaus all testified at the hearing that they answered honestly when asked that question on voir dire. (Docket No. 131 at 44-45, 58, 145-46, 236). That testimony establishes their *subjective* belief that they honestly answered the question posed to them. *See McDonough*, 464 U.S. at 556. After review and consideration of the hearing testimony, the Court concludes that the evidence presented does not contradict or sufficiently undermine the jurors' subjective belief that they answered honestly on voir dire and indicated that they did not harbor racially biased beliefs and could be fair jurors.


**V.     <u>Conclusion</u>**

For the reasons discussed herein, Williams has not made the showing required by *McDonough*, thus he is not entitled to § 2254 relief.

Turning to the question of whether a certificate of appealability should issue pursuant to 28 U.S.C. § 2253(c)(2), we ask whether Williams has "made a substantial showing of the denial of a constitutional right." In this regard we are to determine whether the resolution of the petitioner's claims is debatable amongst jurists of reason. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This does not require a showing that the petitioner will succeed. *Id*. at 337. Indeed, the certificate may be issued even where after full consideration that the petitioner is unlikely to prevail. *Id*. at 338. Instead, "[a] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id*. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)).

Although we reach contrary conclusions on the merits, these standards are satisfied as to petitioner's claim that he was denied his Sixth Amendment right to a jury sufficiently free from

racial bias because one or more jurors did not provide honest answers when asked during voir dire about harboring racial bias and/or the ability to judge the testimony and credibility of black and white persons in the same manor; and whether this court correctly ruled that the Montgomery affidavit is not admissible under the Supreme Court's recent ruling in *Pena-Rodriguez v. Colorado*, -- U.S. --, 137 S. Ct. 855 (2017). Accordingly, a certificate of appealability will be granted on these issues.

        Appropriate orders will follow.

Date: December 29, 2017

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Lisa B. Freeland, FPD
        Gregory J. Simatic, DAG

        (*Via CM/ECF Electronic Mail*)